BENJAMIN F. GEISERT, APPELLANT v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, A CORPORATION, AND CHARLES BECKER, RESPONDENTS.

LABADDIE BOTTOMS RIVER PROTECTION DISTRICT, A CORPORATION, APPELLANT, v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, A CORPORATION, AND CHARLES BECKER, RESPONDENTS. —42 S. W. (2d) 954.

St. Louis Court of Appeals. Opinion filed November 3, 1931.

*W. L. Cole, T. P. Huckriede, J. H. Schaper* and *R. H. Schaper* for appellant.

*Luther Burns, J. E. DuMars* and *James Booth* for respondents.

SUTTON, C.—These actions were instituted separately, and were tried together by agreement of the parties. They were tried before the court, without a jury. The trial resulted in judgments for the defendants. Plaintiffs have separately appealed to this court. The cases were heard together here, and one opinion will suffice to dispose of both of them.

The Labaddie Bottoms River Protection District is a corporation, organized under the provisions of Article 6, Chapter 64, Revised Statutes of Missouri, for the purpose of constructing a system of levees and ditches for reclaiming and protecting land in the Missouri river bottoms. The land included in the district lies wholly, or nearly so, in the river bottoms, and was subject to overflow from

the Missouri river, and from streams coming from the bluffs along the bottoms. The south boundary of the district is generally coincident with the south right of way line of the Chicago, Rock Island & Pacific Railway, and approximately three miles of the company's right of way line lies within the boundary of the district. A very great per cent of the land within the boundaries of the district was in comparatively recent years a part of the Missouri river. The district is on the south side of the river. A number of streams flow from the south and find outlet into the main ditch constructed and maintained by the district. Fiddle creek, Imann branch, Reed branch and Becker branch are the most important streams, but there are some minor ones that empty into the main ditch. These streams arise and have their source in the bluffs south of the district, and the land is all agricultural land. The main ditch of the district is located north of, parallel with, and adjacent to the right of way of the railway company. When the ditch was constructed the earth excavated therefrom was utilized in the construction of a levee on the north side of the ditch. Within a distance of three miles wherein the ditch parallels the railway right of way four streams flow from the hills or bluffs through bridges in the railway embankment. Fiddle creek is the largest of these streams. Imann branch is another, but of less importance. West of Fiddle creek and Imann branch is Reed branch, and two thousand feet west of Reed branch is Becker branch.

Plats and drawings of the bottoms introduced in evidence, show numerous creek beds, depressions and swales. Water coming from the hills and flowing through Becker branch and Reed branch formerly found its way into Labaddie creek, and thence to the Missouri river. A considerable section of Labaddie creek is now cut off by the levees of the district, and the creek bed is in cultivation. The main ditch of the district intercepts Fiddle creek, Reed branch, Imann branch, Becker branch and other smaller streams, and carries the water easterly to the Missouri river. When the railroad was built a bridge was constructed in its embankment, some distance east of the present bridge over Becker branch, which is designated as bridge 44.3, and concerning which complaint is made in these suits. In about the year 1900 the bridge which had been constructed east of the present bridge over Becker branch was discontinued presumably because of changes in the flow of water and filling up by sedimentation. Becker branch has always been a natural watercourse fed by springs and water from rainfall and melting snow, and has a drainage area of about two hundred fifty-eight acres. The area tributary to all the streams mentioned is agricultural land, and in case of heavy rainfall considerable quantities of silt are carried down these streams. Since the recession of the Missouri river

from a point near the bluffs to the present location, the bottoms have been filled rapidly from alluvion from the hills and accretion from the river. The main ditch, the levees and other improvements of the district were constructed in 1924 or 1925. Becker branch originally flowed south in a ravine through the bluffs to the foot of the bluffs, and thence easterly along the foot of the bluffs, and emptied into Reed branch. Later the course of this stream changed so that it ran north to the railroad right of way. The width of the bottom land between the bluffs and the railroad right of way is about five hundred feet. The change in the course of the stream appears to have been gradual, and resulted from natural causes. In February, 1922, the railway company installed a 2x2 foot wooden box culvert in the railroad embankment, at the point where Becker branch flows down to the railroad right of way. The railway company was troubled a great deal with water coming down Becker branch to the roadbed, washing out the track and running over the track and washing out the ballast and portions of the embankment. As a result of heavy rains Becker branch would become swollen to such an extent that the box culvert was insufficient to carry the water. It would then inundate the track and wash the box culvert and road embankment out so that the track would be suspended without support, rendering it impossible to operate trains. It was on this account that the railway company installed the bridge to carry the waters flowing down to the right of way in Becker branch. This bridge was constructed in June, 1928. It is forty-two feet in length. The excavation made in the embankment at the time of the construction of the bridge was about three feet deep at the center panel of the bridge. No excavation was made upon the right of way of the railway company except through the embankment beneath the bridge.

Defendant Becker owns the land south of the railroad right of way on each side of Becker branch as it now flows. The slope of the land along Becker branch from the bluffs to the right of way is toward the north; the fall from the bluffs to the right of way being two to three feet. The land to the north of the right of way is much lower than the right of way and the land to the south of it. When Becker branch flowed easterly along the foot of the bluffs it appears that there was a channel for only a part of the way, so that the waters flowing to the east spread over the low land, and thence reached Reed branch. Thus, it appears, there was a gradual filling up of the channel of Reed branch and Becker branch so that Becker branch gradually worked to the west. At one time it flowed in a northeasterly direction, but in time it filled up by sedimentation so that it changed its course. It ceased to flow east or northeast, and instead emptied into a natural basin west of its present

course until the basin was filled by sedimentation. It then gradually worked easterly until it flowed directly north to and against the railway roadbed at the point where bridge 44.3 is now located. The embankment held the water, forming a pond and wet places on the land, whereupon the box culvert before mentioned was placed through the embankment. The culvert proved insufficient to carry the waters coming down Becker branch in case of heavy rainfall, so that the culvert and the railway embankment were washed out as before stated. To remedy this, bridge 44.3 was built.

The petitions complain of the defendant railway company for the construction of bridge 44.3, and complain of the defendant Becker for changing the course of Becker branch by digging a ditch across his land from south to north, to the railroad right of way, thus diverting from its natural course the waters of said branch, and causing the waters thereof to flow through and under said bridge into the drainage ditch, thus filling up the drainage ditch with sediment, breaking through the drainage levee, and overflowing the lands of plaintiff Geisert, to the damage of both the plaintiff district and the plaintiff Geisert, and these suits are brought to recover for the damage thus wrought.

At the conclusion of the whole case the plaintiffs separately requested peremptory instructions directing the court to find for the plaintiffs. Errors are assigned by the respective plaintiffs for the refusal of these instructions.

We can see no grounds, and none have been suggested, that would have warranted the court in giving these instructions. Of course, it is settled law that one who diverts a watercourse from its natural channel, and thereby damages another, must answer for such damage, but the evidence here is far from conclusive that the defendants, or either of them, diverted the course of Becker branch. The railway company did nothing except to construct a bridge and open up its embankment so as to let the waters of Becker branch flow through. It did not excavate or destroy any natural barrier. We know of no law requiring the railway company to construct or maintain an artificial barrier to protect the lower proprietors from the waters coming down Becker branch, even though these waters had been diverted from their natural channel by the acts of the defendant Becker; surely not, if the diversion resulted from natural causes. It is evident that the waters of Becker branch were determined to go through, and did, a number of times, go through the railway embankment, washing out this artificial barrier constructed and maintained by the railway company for the purpose of its roadbed. It is elementary that the servient owners must suffer the consequences of the unrestrained flow of drainage onto their lands from those of the dominant owners. [McMurry v. Kansas City, 283 Mo. 479, l. c. 503, 223 S. W. 615.]

Moreover, if Becker branch was a natural watercourse, and certainly the evidence tends to show that it was, it was the duty of the railway company, under the statute (Sec. 4765, R. S. 1929), to provide an opening through its embankment by means of a culvert or bridge of sufficient capacity to permit the waters of the branch to escape through it, so as to connect with the drainage ditch.

The plaintiff district is a public corporation, and the main ditch constructed by it is a public ditch or drain, devoted to public uses, and as such is bound to receive the waters from natural watercourses, including overflow and flood waters from such watercourses, and surface waters flowing in their natural course, from adjacent lands. In other words, we think, such ditch, with respect to the right of drainage from adjacent lands, is substantially the same as a natural watercourse.

It is true there was evidence tending to show that the digging of a small ditch, with a spade, by defendant Becker, across his land from north to south, was the cause of the diversion of Becker branch from its former channel. But there was also evidence tending strongly to show that its diversion was the result of natural causes.

The court admitted evidence, over the objection of the plaintiffs, showing that the railway company was assessed with certain benefits by the district, which was reduced to a lump sum and so paid by the railway company, the company receiving from the district a receipt releasing it from any further payments on account of its right of way being included in the district. The materiality of this evidence is not apparent. It is obvious, however, that its admission had no controlling effect upon the court's decision. The evidence was offered and admitted only on behalf of the railway company as evidence in the district case, and it was not claimed to have any effect or bearing on the other case, but the court found against the plaintiffs and in favor of the defendants in both cases. Moreover, the record shows that at the time the receipt was put in evidence the court expressed the opinion that the evidence was not material, overruling the objection thereto "at the present time." No subsequent request was made to have the evidence excluded, and, so far as the record shows, the court made no final ruling on the materiality of the evidence, and no exception was taken to the failure of the court to rule thereon. It is obvious that we cannot convict the court of error for the admission of this evidence. Besides, it is evident that its admission was harmless.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.